IN THE UNITED STATES DISTRICT COURT
OF THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PENUMBRA, INC., | § § § | |
| *Plaintiff*, | § § | |
| V. | § § | Case No. 3:23-cv-02345 |
| STEWARD HEALTH CARE SYSTEM, LLC, | § § § § | |
| *Defendant*. | § § | |

# ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Penumbra, Inc., a Delaware corporation ("**Penumbra**" or "**Plaintiff**"), by and through its undersigned counsel, hereby complains as follows:

## NATURE OF ACTION

1. This action stems from Defendant Steward Health Care System, LLC's ("**Steward**" or "**Defendant**") failure to pay amounts owed to Plaintiff for unpaid products and goods supplied by Plaintiff, plus contract-based finance charges, late fees, attorneys' fees, interest and costs.

## PARTIES

2. Plaintiff is a Delaware corporation with a principal place of business located at One Penumbra Place, Alameda, California 94502.

3. Defendant is a limited liability company existing under the laws of the State of Delaware, with its principal place of business and headquarters located at 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201. Upon information and belief, Defendant's sole member is Steward Health Care Holdings LLC, which is a limited liability company existing under the laws

of the State of Delaware, with its principal place of business located at 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201. Upon information and belief, Steward Health Care Holdings LLC's membership is comprised of the following, all of which are believed to be citizens and residents of states other than the State of California:

    a. Harrison Bane, who is believed to be a citizen and resident of the State of Massachusetts and conducts significant business at 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201;

    b. John A. Boehner, a Texas citizen believed to be residing in the State of Ohio, who conducts significant business at 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201;

    c. Michael Callum, who is believed to be a citizen and resident of the State of Texas and who conducts significant business at 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201;

    d. Ralph de la Torre, MD, who is believed to be a citizen and resident of the State of Texas and who conducts significant business at 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201;

    e. Octavio Diaz, M.D., who is believed to be a citizen and resident of the State of Massachusetts and who conducts significant business at 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201;

    f. John Donlan, who is believed to be a citizen and resident of the State of Massachusetts and who conducts significant business at 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201;

    g. Christopher Dunleavy, who is believed to be a citizen and resident of the State of Texas and who conducts significant business at 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201;

    h. Brian Dunn, who is believed to be a citizen and resident of the State of Utah and who conducts significant business at 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201;

    i. Nathalie Hibble, who is believed to be a citizen and resident of the State of Massachusetts and who conducts significant business at 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

4. Plaintiff and Defendant are collectively referred to herein as the "**Parties**."

## JURISDICTION AND VENUE

5. There is complete diversity between the Parties pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of the State of California and Defendant, including its members, are all citizens of the States of Texas, Massachusetts, and Utah.

6. The amount in controversy requirements of 28 U.S.C. § 1332 are satisfied in that there is more than $75,000.00 at issue, exclusive of costs, interest and attorney fees.

7. This action properly lies in the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District. Accordingly, venue is proper in this Court.

8. This Court has personal jurisdiction over the Defendant.

## FACTS COMMON TO ALL ALLEGATIONS

9. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set out herein.

10. Plaintiff develops, manufactures and sells medical products to hospitals and healthcare providers.

11. In this case, Plaintiff sold medical products to medical facilities owned and operated by Defendant pursuant to the terms and conditions set forth in the following agreements: Purchasing Agreement dated May 1, 2018 as amended (Agreement No. HPG-6541); Purchase Agreement dated May 1, 2022 as amended (Agreement No. HPG-7183), Purchasing Agreement dated May 1, 2018 as amended (Agreement No. HPG-72614) (collectively, the "**Purchase Agreement**"); and that certain Pricing Agreement, dated on or about September 1, 2021 (the "**Pricing Agreement**").

12. Defendant and/or certain of its hospitals purchased products supplied by Plaintiff and agreed to pay for such purchases. Each sale of products is further evidenced by individual invoices (collectively, the "**Invoices**").

13. The Invoices specify and provide that the payment terms are net 60 days and unpaid balances are subject to a finance charge of 1 – 1/2 % per month or the maximum rate permitted by law. For the sake of brevity, a summary of the Invoices is attached hereto as Exhibit 1.

14. The terms and conditions governing the sale of products by Plaintiff and Defendant's obligations relating to such purchases are set out in the Purchase Agreement, Pricing Agreement, Invoices and such other related documents (collectively, the "**Agreement**").

15. By December 2, 2022, Defendant owed a past due balance to Plaintiff in excess of $4.6 million.

16. As a result, discussions ensued between Plaintiff and Defendant (through its Senior Vice President of Supply Chain) regarding arrangements for repayment. During those discussions, Defendant *admitted* that the total past due amount was owed and agreed to make payments on a

periodic schedule (of weekly payments of $150,000 starting on December 5, 2022 and increasing to weekly payments of $200,000 starting in early January 2023) to result in full repayment of the past due amount by May 2023.  Defendant did not perform under this arrangement.

17. As a further accommodation, Plaintiff agreed to accept weekly payments of $150,000 starting January 30, 2023 until full repayment of the outstanding unpaid balance.  Yet, Defendant remained unwilling to perform under the modified arrangement but cited an asset divestiture expected to be consummated by May 1, 2023, as a possible source of funds. Thus, Plaintiff agreed to reduce the amount of the weekly payment to $75,000 subject to receipt of a significant repayment upon the close of the asset divestiture and additional payments to satisfy the unpaid balance owed.

18. Subsequent to the Defendant's divestiture of the above-referenced assets, on June 7, 2023, Plaintiff sent a demand letter seeking payment of the past due amount.

19. In response to the demand letter, a payment plan was proposed by Defendant's Senior Vice President of Supply Chain and agreed to by Plaintiff that would allow the two companies to continue to work together, including Plaintiff's conditional agreement to provide a 10% discount for payments in the month of June subject to satisfaction of all other terms.

20. Under that June payment plan "June Payment Plan", Defendant agreed to pay $200,000 by June 16th, $200,000 by June 23rd, $1,760,000 (Defendant to be credited for a $2,000,000 payment, which reflects a $240,000 discount) by June 30th, and $200,000 a week thereafter until the past due amount was paid, while the Plaintiff would ship product of up to $100,000 a week conditioned on Defendant making the aforementioned payments.  No payments came from the June Payment Plan.

21. In fact, Plaintiff received only intermittent partial payments with a payment received in early April 2023 and no additional payments under the June Payment Plan. Plaintiff received the foregoing payments with a continuing reservation of all rights and remedies.

22. Due to Defendant's failure to make all of the payments contemplated by the June Payment Plan, Defendant was and is not entitled to any of the aforementioned credits or discounts for payments received as described above.

23. In July 2023, Plaintiff also notified Defendant that it intended to pursue its remedies, including commencement of legal action. Through these July discussions, the Plaintiff paid $2,000,000 and, for the remaining outstanding balance, the Senior Vice President of Supply Chain cited an asset divestiture to be consummated by early August, as a possible source of funds, with an understanding that both parties would revisit payments in early August.

24. In early-August 2023, payment plan discussions resumed between Defendant and Plaintiff. Defendant agreed to resume making weekly payments of $200,000. In reliance on Defendants representation of performance under the expected payment plan, Plaintiff was induced to continue discussions regarding a further payment plan to resolve delinquent amounts.

25. In early August 2023, further discussions ensued with the Defendant's new Vice President of Supply Chain agreeing to re-commence making weekly payments of $200,000 until the balance was paid off.

26. Despite the large balance owed to Plaintiff, Plaintiff was further induced to resume shipment of goods out of a good faith desire to assist a long-standing customer and in the interest of continuing to make medical devices available to that customer's patients. It was agreed that payments for those shipments would be due the Tuesday following the week in which the

shipments were made. Based on this understanding and assurances that weekly payments would re-commence, Plaintiff resumed shipment of goods invoiced in the amount of $623,484.39.

27. In addition to these shipments, products were used from consignment and travel stock cases amounting to $104,557.61, for a total amount of $728,042 in additional products utilized by Defendant in the months of August and September.

28. The Plaintiff and Defendant continued to have payment discussions throughout the month of August and September. As a result of the August and September discussions, Defendant's Vice President of Supply Chain agreed to weekly payments to Plaintiff, but did not to make any of the weekly payments as promised. Although the Defendant paid $1,165,150 in August and September in two, lump sum payments toward the outstanding balance, the Defendant never tendered the weekly payments as previously agreed and continues to ignore requests for those payments.

29. As alleged above, Plaintiff has made numerous attempts in good faith to resolve the delinquent payments by cooperating in various payment plans with Defendant that were designed to enable continuing shipments of Plaintiff's products to Defendant. During this time period, Plaintiff forbore from exercising its available legal rights and remedies with a reservation of all such rights and remedies without any waiver.

30. As of October 5, 2023, the past due amount owed is not less than $2,473,928 exclusive of applicable finance charges and other recoverable amounts. Defendant has failed to make and refuses to make payment in full despite the numerous requests, demand letters, and the various payment plans agreed to by its authorized representatives.

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT

31. Plaintiff incorporates by references the allegations contained in Paragraph 1-30 as if fully set out herein.

32. Plaintiff and Defendant entered into a valid and enforceable written contract, to wit, the Agreement.

33. Plaintiff performed its obligations under the Agreement.

34. All conditions precedent have occurred or have been waived or excused.

35. Despite Plaintiff's performance, Defendant breached the Agreement, by *inter alia*, failing to pay Plaintiff for the products it sold and furnished to Defendant.

36. After accounting for the aforementioned partial payments, Defendant remains obligated in the amount of not less than $2,473,928 plus all applicable finance charges and other recoverable amounts.

### COUNT II – UNJUST ENRICHMENT/QUANTUM MERUIT

37. Plaintiff incorporates by references the allegations contained in Paragraph 1-36 as if fully set out herein.

38. Count Two is hereby pled in the alternative to Count One if the Agreement is held to be unenforceable against Defendant.

39. At all relevant times herein, Plaintiff conferred an enrichment, benefit or benefits to Defendant.

40. As a result, Plaintiff suffered prejudice and economic harm.

41. There is a direct relationship between the enrichment Plaintiff provided and the prejudice and economic harm Plaintiff suffered.

42. Defendant had knowledge of the benefit or benefits that Plaintiff conferred.

43. Defendant voluntarily accepted, retained, appreciated and received the benefit or benefits that Plaintiff provided to Defendants, at the expense of Plaintiff.

44. Defendant was enriched by the benefit or benefits provided by Plaintiff.

45. Defendant unjustly retained a benefit to Plaintiff's detriment.

46. There was no justification for Defendant's unjust enrichment.

47. Defendant's retention of the benefit violates the fundamental principles of justice, equity and good conscience.

48. Pleading in the alternative, Plaintiff lacks a remedy provided by law.

49. Despite the receipt of such enrichments, Defendant has refused to compensate Plaintiff for the unjust enrichment of in the amount of not less than $2,473,928 plus all applicable finance charges and other recoverable amounts.

## COUNT III – ACTION FOR ACCOUNT STATED

50. Plaintiff incorporates by reference the allegations contained in Paragraph 1-49 as if fully set out herein.

51. Count Three is hereby pled in the alternative to Count One and Count Two.

52. Throughout the relationship between the parties, Plaintiff rendered the Invoices that constitute statements of account for amounts owed by Defendant in exchange for products furnished by Plaintiff.

53. Defendant has acknowledged and agreed to the accuracy of the Invoices.

54. During this time, Defendant retained the Invoices for a substantial period of time without objection.

55. Defendant recognized and acknowledged the correctness of the account, as reflected in the Invoices submitted by Plaintiff, without contesting same.

56. Defendant promised to pay the outstanding balance due and owing to Plaintiff.

57. Defendant's failure to object to the Invoices from Plaintiff constitutes an acceptance of the amounts due and owing as reflected in the Invoices.

58. Defendant failed to make payments to Plaintiff who, as a result, has sustained damages in an amount not less than $2,473,928 plus the amount of the finance charge allowed by applicable law.

## COUNT IV – RECOVERY OF ATTORNEY FEES

59. Plaintiff incorporates by reference the allegations contained in Paragraph 1-58 as if fully set out herein.

60. Upon Defendant's failure to pay the balance owing on the Agreement, Plaintiff placed the aforementioned contract in the hands of the undersigned attorney for enforcement, and has agreed to pay said attorney reasonable attorney fees for his services, for which Defendant has become liable by virtue of TEX. CIV. PRAC. & REM. CODE § 38.001 *et seq*.

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons set forth herein, Plaintiff prays that this Court enter judgment in its favor and against Defendant as follows:

a. Damages of not less than $2,473,928, plus all applicable finance charges and other recoverable amounts,

b. Prejudgment interest at the highest lawful rate;

c. Post-judgment interest at the highest lawful rate;

d. Attorney fees and costs; and

  e. Such other and further relief as this Court deems just and proper.

           **Respectfully Submitted,**

           */s/ Owen C. Babcock*
           Mark W. Stout
           State Bar I.D. #24008096
           *mstout@padfieldstout.com*
           Matthew D. Giadrosich
           State Bar I.D. #24074274
           *mdg@padfieldstout.com*
           Owen C. Babcock
           State Bar I.D. #24104585
           *obabcock@padfieldstout.com*
           PADFIELD & STOUT, L.L.P.
           420 Throckmorton Street, Suite 1210
           Fort Worth, Texas 76102
           817-338-1616 – Telephone
           817-338-1610 – Facsimile

           *Attorneys for Plaintiff*
           *Penumbra, Inc.*